IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        )
                                )
          v.                    )        Criminal No. 09-105
                                )
DAMON L. COLLINS                )

## UNITED STATES RESPONSE TO DEFENDANT'S MOTION TO REVIEW DETENTION ORDER AND/OR MODIFY DETENTION ORDER

          The defendant was indicted on June 15, 2010 for conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine. DEA Agents spoke to the defendant by phone during the search of his home, soon after July 15, 2010, and informed him that he was wanted on federal drug charges. The defendant refused to turn himself in and remained at large until his arrest 20 months later on February 19, 2012.  Following the arrest of Collins, he was ordered detained pending trial by United States Magistrate Judge Chooljian in California.  Collins has moved this Court to review Judge Chooljian's detention order and/or to modify the detention order.

          As explained more fully below, the defendant's motion should be denied.  The charges in the indictment generate a presumption in favor of pretrial detention.  Moreover, his fugitive status, the specific facts underlying his charges and his prior criminal acts, would justify his detention, even in the absence of such a presumption.  The defendant should, therefore, remain detained pending trial to protect the community and to ensure that he is

present to face the pending charges.

## I.  Factual Background

The defendant was not a minor participant in the wide-ranging, nationwide drug conspiracy that resulted in the return of a Second Superseding Indictment against multiple defendants.  The defendant was a main cocaine source in the conspiracy and served as one of the connections between the conspiracy's Pittsburgh cocaine distributors and cocaine facilitators outside Pittsburgh.  As such, he was a critical component of the supply chain that resulted in the transportation to, and the distribution of, at least 2000 kilograms of cocaine in the Pittsburgh area.  His participation in the conspiracy is confirmed by the statements of individuals close to or involved in the drug trafficking organization as well as the multitude of corroborating documents revealed during the federal investigation.  The defendant has been involved in an extensive money laundering ring involving approximately 1.9 million dollars laundered by Collins and his co-defendants.

The defendant's active participation in the criminal activity, including money laundering and drug dealing, continued to the moment he was arrested on February 19, 2012. In fact, on that date, he was in possession of fake identification documents to conceal his identity. The other individual Collins was with at the time of his arrest on February 19, 2012 was found to illegally possess

firearms.

The defendant has utilized the services of many individuals close to him in order to launder his ill-gotten gains. These individuals include the mothers of his children, friends of the family, his own mother and his own daughter. The investigation of their activities on his behalf is expected to result in charges being presented to the Grand Jury in the near future and has already resulted in a forfeiture allegation against his home.

## II.  Argument

As reflected in the Pretrial Services Report, the defendant's criminal history involves multiple arrests on drug charges and has resulted in his violation of his previously imposed court restrictions.  When viewed in conjunction with the substantial mandatory minimum sentence of at least 20 years in prison that would apply to the defendant if convicted, his failure to conform his actions to fundamental legal obligations does not generate confidence that he will remain crime free in the future. Similarly, his 20 month hiatus and false identification clearly indicate the nonexistent chance that he will appear if freed pending trial. Moreover, his lack of recent verifiable employment is by no means a positive characteristic for an adult who has been of legal working age many years.

## III. Pretrial Services Report in California

A review of the California PSR indicates the following:

1. The defendant's father is deceased;

2. The defendant had no verifiable employment and has claimed no employment at all in the last 7+ years;

3. The defendant alleges "not much contact" with his 3 adult children;

4. The defendant has traveled to Columbia, Venezuela, Brazil, Amsterdam, Italy, Spain and the Bahamas but is "unaware of [the] whereabouts" of his passport;

5. The defendant admitted to living in "various hotels" for at least the 2 months prior to his arrest;

6. The defendant has 3 misdemeanor drug arrests and 2 felony arrests. One of his arrests for transporting narcotics resulted in his February 9, 1988 conviction, a sentence of 4 months in jail and 3 years probation. On July 21, 1988 his probation was revoked and he was sentenced to 3 years incarceration.

The California Probation Officer concluded that the defendant was both a danger to the public and a risk of flight.

### IV. Government's Request

The government filed a request for detention alleging that the defendant was both a risk of flight and a danger to the public, noting the presumption of detention under 18 U.S.C. § 3142.

### V. Pretrial Services Report in Pennsylvania

A review of the Pennsylvania PSR reveals that the United States Probation Office in the Western District of Pennsylvania

agreed with the United States Probation Office in California, the government and the California Court. The United States Probation Officer in Pennsylvania independently reviewed the matter and concurs that the defendant should remain detained.

## VI. Court Decision in California

As noted, the court determined that the defendant should be detained. The court specifically noted the following facts: "fugitive status, fake ID at time of arrest, lack of current stable residence and employment, valid U.S. passport that cannot be located, and extensive foreign travel."

## VII. Minimum and Maximum Sentences

The Second Superseding Indictment in this matter charges the defendant with being a part of a conspiracy for in excess of 5 kilograms of cocaine. His prior felony drug conviction listed in the PSR makes his mandatory minimum sentence 20 years and his maximum sentence life in prison. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

## VIII. Legal Basis

Federal pretrial release and detention decisions are dependent upon the application of 18 U.S.C. § 3142. Section 3142 directs the pretrial detention of the defendant if no condition or combination of conditions will reasonably assure his appearance as required and the safety of any other person and the community. In addition, Section 3142 directs this Court to presume that he should be

detained pending trial because of the serious nature of the drug trafficking crimes with which he is charged.  The defendant has not and cannot overcome this presumption in light of his serious offense conduct, his criminal history, and his 20 month fugitive status.

Section 3142 in its current form is largely a product of the Bail Reform Act of 1984 ("Bail Reform Act").  *United States v. Delker*, 757 F.2d 1390, 1392-93 (3d Cir. 1985).  The Bail Reform Act mandates the pretrial detention of a dangerous defendant and "specifically provides for consideration of prior arrests in the release decision." *Delker*, 757 F.2d at 1393, 1400.  In requiring the detention of a dangerous defendant, Congress recognized that a defendant's community ties do not mitigate the danger he presents to the community. *Delker*, 757 F.2d at 1396.  The Third Circuit Court of Appeals in *Delker* acknowledged that a defendant's pretrial release may very well endanger a community even if the defendant has several longstanding ties to it.

The findings of Congress and the Third Circuit referenced in the preceding paragraph apply quite forcefully to the defendant.  His nominal ties to the community simply do not support a conclusion that he can be conditionally released without presenting an unacceptable risk of danger to that community.  In fact, most of the defendant's multiple instances of criminal behavior occurred in California – the very community to which he asks this Court to

release him.

Congress and the Third Circuit have recognized that drug trafficking presents a substantial risk of danger to the community, even when considered apart from the corresponding risk of violence it inevitably generates. "The statutory language, as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate trafficking in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). Indeed, Congress and the Third Circuit have provided this guidance:

> The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. ... *The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."*

*Id*. at 507 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original). Congress and the Third Circuit further recognized: "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S.Rep. No.225, 98th Cong., 2d Sess. 20).

## IX. Conclusion

Section 3142 lists four factors that must be considered in determining whether a defendant should be released or detained pending trial.   Consideration of each of these factors leads inexorably to the conclusion that there is no combination of conditions that could be imposed on and adequately enforced against the defendant that can reasonably assure the safety of the community and his presence at future court appearances.   Therefore, the defendant should remain detained.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney


By:  s/ Ross E. Lenhardt
ROSS E. LENHARDT
Assistant U.S. Attorney
U.S. Post Office and Courthouse
700 Grant Street
Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500 (Phone)
(412) 644-5870 (Fax)
ross.lenhardt@usdoj.gov
PA I.D. 53627