## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED

OCT 3 0 2020

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

| | |
|---|---|
| DAMON L. COLLINS, | ) |
| | ) |
| Movant, | ) |
| | ) |
| vs. | ) Crim No. ~~2:13-cr-00192-NBF-~~1 |
| | ) 2:09-cr-105-DSC-8 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MOTION FOR IMPOSITION OF A REDUCED SENTENCE
## PURSUANT TO SECTION 404 OF THE FIRST STEP ACT

COMES Movant, DAMON L. COLLINS ("Collins"), appearing *pro se,* and in

support of this memorandum would show as follows:

Section 404 of the First Step Act of 2018, enacted on December 21, 2018,

independently authorizes a district court to impose a reduced sentence for

crack-cocaine convictions where the statutory penalty provisions of the Fair

Sentencing Act would have applied had that Act been in effect at the time of the

original sentencing. Collins moves this Court to reduce his sentence pursuant to this

Act.

## I.    BACKGROUND

### A.    Procedural Background

On March 29, 2012, a grand jury sitting in the United States District Court for

the Western District of Pennsylvania, Pittsburgh Division, returned a four (4) count

Second Superseding Information charging Collins and twenty other co-defendants. See Doc. 852.[1] Count 1ss charged Collins with Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii). *Id.* Count 3ss charged Collins with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). *Id.*

On December 28, 2012, the government filed an Information to Establish Prior Conviction, with the intent to seek enhanced penalties pursuant to 21 U.S.C. § 851 ("851 Enhancement"). See Doc. 1276.

On October 15, 2013, a Change of Plea Hearing was held and Collins entered a plea of guilty as to Counts 1ss and 3ss of the Second Superseding Indictment, pursuant to a written Plea Agreement. See Doc. 1882.

On February 7, 2014, Collins was sentenced to a total term of 240 months' imprisonment, 8 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $200. See Docs. 2058, 2071.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division in Criminal No. 2:09-cr-00105-DSC-8, which is followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

## B.   Statement of the Relevant Facts

### 1.   Offense Conduct

The offense conduct information below was provided by the government:

This investigation, was conducted by the Internal Revenue Service (IRS) Criminal Investigations, the Drug Enforcement Administration (DEA) and multiple other federal, state and local law enforcement agencies. In part, the investigation relied upon search warrants, court orders, consensually recorded conversations, surveillance and information supplied by confidential sources, as well as records and documents obtained by Grand Jury and Administrative subpoenas. The investigation revealed a major cocaine distribution conspiracy which resulted in cocaine being transported to Pittsburgh, Pennsylvania and other areas from 2000 through 2010. Defendant Robert Russell Spence Jr. was a local fulcrum of the conspiracy, which was supplied by various cocaine sources over time.

The investigation revealed that the conspiracy involved over 2,000 kilograms of cocaine and millions in laundered drug money. From February 2007, until March 2010, the defendant (Collins) was an organizer of more than five of the participants involved in the conspiracy and he was a major supplier- of the cocaine that was being shipped to Pittsburgh and other areas from California. During Collins' involvement in the conspiracy, he was responsible for 132 kilograms of cocaine. The defendant was involved in laundering $2.1 million in drug proceeds which he laundered with the help of others. It is noted that agents recovered $35,780.00 from Collins' residence, as well as a Smith & Wesson Model 669 9mm handgun with an obliterated serial number which was located in a bedside nightstand drawer in the master bedroom of the defendant's residence. The following evidence also confirms that during the course of, his involvement in the conspiracy, Collins maintained apartments in Maryland where hundreds of thousands of dollars (drug proceeds) were counted and stored. There is no evidence that the drugs were stored, sold or processed at the apartments.

3

During the ten year time frame of the conspiracy, it changed both members and mechanisms to adapt. Aside from changing cocaine sources over time, the conspiracy also changed its common manner of doing business. For example, prior to the summer of 2007, the conspiracy utilized packages of cocaine being shipped by the U.S. mail or various common carriers from California to recipients such as Spence in Pittsburgh. Documents and evidence revealed large numbers of packages of cocaine were shipped to the conspirators and packages of drug money were shipped back. Multiple seizures of both money and cocaine packages occurred.

For example, on June 7, 2007, United States Postal Inspectors (USPI) intercepted 6 kilograms of cocaine from the mail that was earmarked for the conspiracy. On August 5, 2007, USPI also seized a package containing $99,850.00 intended for one of the defendants.

The conspiracy subsequently began using couriers to transport cocaine to Pittsburgh and money back to California. The investigation revealed that between 2007 and 2010 at least eleven different couriers took over 100 flights for the conspiracy. These involved the transportation of cocaine to Pittsburgh and the transportation of drug money back to California. Again, multiple packages of both money and cocaine were intercepted.

For example, in February of 2008, defendant, Ruben Mitchell, boarded a plane in Oakland bound for Pittsburgh with cocaine in his luggage. The flight attendant had trouble getting the carry-on bag into the overhead bin; therefore, an airline employee called a "tamper" who put a tag on the bag mistakenly causing it to be removed from the plane during a layover in Las Vegas. There, airline employees opened the bag and discovered that it contained 19 kilograms of cocaine. Mitchell was observed, along with others, looking for the bag in Pittsburgh and he also filed a claim for the bag.

Another example of what occurred during the conspiracy was that on August 8, 2009, over $335,000.00 in cash, just one part of approximately $700,000.00 that was sent on this occasion, was seized

4

from the luggage of a conspirator.

During other times, the conspiracy arranged transportation of cocaine or money by means such as chartered private flights and vehicles including tractor trailers. Individuals charged in this conspiracy performed a variety functions within the conspiracy. Some conspirators were suppliers, couriers or recipient drug dealer/distributors while others were shippers or receivers; arranging for the couriers, flights and flight payments, and still others were money launderers. The conspiracy also had individuals in place that assisted in the circumvention of security procedures at airports.

See PSR ¶¶ 9-17.

### 2.   Plea Proceeding

On October 15, 2013, a Change of Plea Hearing was held before Judge David S. Cercone. See Doc. 1882. Collins pled guilty to Counts 1ss and 2ss of the Second Superseding Indictment, pursuant to a written Plea Agreement. In exchange for Collins' guilty plea, the government agreed to recommend a two-level reduction in the offense level based on acceptance of responsibility. See PSR ¶ 5. The case was referred to the Probation Office for the preparation of the PSR.

### 3.   Presentence Report Calculations and Recommendations

On December 20, 2013, the Probation Office prepared Collins' PSR, which was revised on December 27, 2013. Counts 1ss and 3ss were grouped together in accordance with the provisions of § 3D1.2(d). See PSR ¶ 22. Based solely on the drug type and quantity (132 kilograms of cocaine, pursuant to § 2D1.1(c)(2)), the Base

Offense Level was 36. See PSR ¶ 23. Two (2) levels were added because Collins was convicted under 18 U.S.C. § 1956, pursuant to USSG § 2S1.1(b)(2)(B). See PSR ¶ 24. Four (4) levels were added because Collins was an organizer or leader of more than five members of the conspiracy, pursuant to USSG § 3B1.1(a). See PSR ¶ 26.Collins received a two (2) level reduction for acceptance of responsibility, pursuant to USSG § 3E1.1(a). See PSR ¶ 30. The PSR calculated Collins' Total Offense Level to be level 40. See PSR ¶ 31. Collins' total criminal history points of 0, placed him in Criminal History Category I. See PSR ¶ 34. Based upon a Total Offense Level of 40 and a Criminal History Category of I, the guideline imprisonment range was 292 to 365 months. See PSR ¶ 60.

**Note:** The minimum term of imprisonment of Count 1ss was 20 years and the maximum term was life, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 851. The maximum term of imprisonment at Count 3ss was 20 years, pursuant to §§ 1956(a)(1) and (b)(i). See PSR ¶ 59.

### 4.   Sentencing Proceeding

On February 7, 2014, a Sentencing Hearing was held before Judge David S. Cercone. See Doc. 2058. After review of the PSR, the Plea Agreement was accepted by the Court and Collins was sentenced to a term of 240 months' imprisonment on Counts 1ss and 3ss, said term to run concurrent; followed by 8 years of supervised

release on Counts 1ss and 3ss, said terms to run concurrent. See Doc. 2071. No direct appeal was filed in this case.

## II.   **DISCUSSION**

As a preliminary matter, Collins respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. See *Higgs v. Attorney Gen. of The United States*, 655 F.3d 333 (3rd Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

In this case, Collins' sentence was driven by his sentencing enhancement under 21 U.S.C. § 851. This enhancement virtually increased his sentence. With regard to the prior conviction used to enhance Collins under 21 U.S.C. § 851, he was previously convicted of at least one (1) prior "felony drug offense." See Doc. 1276.

Here, Collins was enhanced pursuant to § 851 enhancement because of his prior conviction for:

(1)   Felony Drug Offense, in the Superior Court of California, Court Number 1031905, Collins pled guilty to one count of PC-11352HS on January 12, 1988 and received a sentence of 3 years' probation on February 9, 1988. On July 19, 1988, his probation was revoked and sentenced to 3 years state prison. Ultimately, Collins was paroled on December 8, 1989.

See Doc. 1276.

7

<u>How 21 U.S.C. § 851 Works</u>

If the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), and the prosecutor filed a notice before trial or entry of a guilty plea under 21 U.S.C. § 851 of one "prior conviction for a felony drug offense," the statutory range increases from 10 years to life to 20 years to life. If the prosecutor filed a notice of two "prior convictions for a felony drug offense," the statutory range increases from 10 years to life to LIFE.

See 21 U.S.C. § 851.

A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year … that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). The term:

- includes simple possession of drugs,
- includes misdemeanors in states where misdemeanors are punishable by more than one year, such as Colorado, Connecticut, Iowa, Maryland, Massachusetts, Michigan, Pennsylvania, South Carolina, and Vermont,
- includes diversionary dispositions where the defendant was not convicted in state court,
- places no limit on how old the conviction or diversionary disposition can be.

When the prosecutor files a § 851 enhancement (and does not withdraw it before sentencing), the judge must automatically apply the enhanced mandatory minimum so long as the conviction or diversionary disposition is final and established beyond a reasonable doubt to exist.

In this case, at sentencing, the district court "erred in failing to conduct a colloquy required under 21 U.S.C. § 851(b). When the government files a notice pursuant to 21 U.S.C. § 851(a) to establish prior conviction(s) and thereby secure an increase in the defendant's sentence, "the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted a alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). The district court in this case failed to do so. This was clear error by the court.

Whether a defendant eligible for a § 851 enhancement actually received a § 851 enhancement depends on the district in which he was sentenced, resulting in extreme disparity. "For unknown and unknowable reasons, federal prosecutors have been applying massive numbers of § 851 enhancements in many districts and not in others." *United States v. Young*, 960 F. Supp. 2d 881, 903 (N.D. Iowa 2013) (summarizing the disparity as "stunningly arbitrary"); U.S. Sent'g Comm'n, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 253, 255 (2011) (reporting a "lack of uniformity" in the application of § 851 enhancements, with prosecutors in some districts filing § 851 enhancements in over 75% of cases in which the defendant was eligible for the enhancement while

9

prosecutors in other districts filing no § 851 enhancements in any case in which the defendant was eligible).

Before the 2013 Holder Memoranda (and continuing today in some districts), § 851 enhancements were routinely used in most districts as a threat to induce defendants to plead guilty and cooperate against others, and to punish defendants who exercised their right to trial or declined to cooperate. *See* Human Rights Watch, *An Offer You Can't Refuse: How US Federal Prosecutors Force Drug Defendants to Plead Guilty* (Dec. 5, 2013); *Young*, 960 F. Supp. 2d at 888; *United States v. Kupa*, 976 F. Supp. 2d 417, 419-20 (E.D.N.Y. 2013).

"To coerce guilty pleas, and sometimes to coerce cooperation as well, prosecutors routinely threaten ultra-harsh, enhanced mandatory sentences that *no one*—not even the prosecutors themselves—thinks are appropriate. And to demonstrate to defendants generally that those threats are sincere, prosecutors insist on the imposition of the unjust punishments when the threatened defendants refuse to plead guilty." *Kupa*, 976 F. Supp. 2d at 420.

Under the 2013 Holder memos, the defendant need not agree to plead guilty or cooperate in return for the prosecutor declining to charge § 851s (or quantity). The Aug. 12 memo says at p. 2 under "Timing and Plea Agreements" that the defendant needs only "meet the criteria." The Aug. 29 memo says that for defendants "charged

10

but not yet convicted," "prosecutors should apply the new policy and pursue an appropriate disposition consistent with the policy's section, 'Timing and Plea Agreements,'" and that for defendants who already pled guilty or were convicted by a jury, prosecutors are "encouraged" to "consider" withdrawing § 851s.

> *For Defendants whose mandatory minimum was enhanced under § 851,*
> *the sentence may be lower today for the following reasons:*

- A prior conviction previously counted as a predicate "felony drug offense" would not qualify as a predicate offense under current law.
- A prosecutor would not file one or more § 851 notices under the August 2013 Holder Memoranda.
- In a crack case in which the prosecutor would file the § 851 notice or notices, the Fair Sentencing Act would lower the mandatory minimum.

> *If the Collins were sentenced today, would the prosecutor decline to file*
> *a § 851 enhancement under the August 2013 Holder Memorandum?*

To determine whether a prosecutor would file a § 851 enhancement today in the case of a defendant whose mandatory minimum and/or statutory maximum sentence was increased based on § 851 enhancements, look to the August 12, 2013 Holder Memorandum. It states that prosecutors "should decline to file an information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that makes the case appropriate for severe sanctions[,] . . . consider[ing]" six factors. The defendant need not meet each of the six criteria; instead, it is a totality of the

circumstances test. There is no requirement that the defendant pled guilty or cooperated. And the question whether the client was "involved in the use or threat of violence in connection with the offense"—does not include relevant conduct, i.e., the conduct of a codefendant, co-conspirator, or other person involved in the offense.

Here, Collins' 851 enhancement was based on his 1987 drug offense in California. The arrest report containing the specific details of the offense has not been received. The complaint indicates that on October 11, 1987, Collins willfully and unlawfully transported, imported into the State of California, sold, furnished, administered, and gave away an unspecified amount of cocaine. See PSR ¶ 33.

Hence, the prosecutor should have declined to charge the § 851 enhancement under the Attorney General's charging policy.

### A.    The First Step Act of 2018

The First Step Act (P.L. 115-391) was signed into law by the President on December 21, 2018. The Act deals mostly with reentry of the incarcerated, directing the Federal Bureau of Prisons to take specific actions regarding programming, good-time credit, and compassionate release, among other issues. The Act does not contain any directives to the Commission.

Related to its sentencing reform provisions (Title IV), the Act makes important changes to mandatory minimum penalties and to the safety valve provision (a

12

provision that allows courts to sentence a defendant without regard to the mandatory minimum). Specifically, in relation to Title IV, the Act:

- reduces certain enhanced penalties imposed pursuant to 21 U.S.C. § 851 for some repeat offenders and changes the prior offenses that qualify for such enhanced penalties;
- broadens the existing statutory safety valve eligibility criteria at 18 U.S.C. § 3553(f), which authorizes a court to impose a sentence without regard to any drug mandatory minimum penalty when all criteria are met;
- limits "stacking" of the 25-year penalty imposed under 18 U.S.C. § 924(c) for multiple offenses that involve using, carrying, possessing, brandishing, or discharging a firearm in furtherance of a crime of violence or drug trafficking offense;
- applies the Fair Sentencing Act of 2010 retroactively; and
- authorizes the defendant to file a motion for "compassionate release," pursuant to 18 U.S.C. § 3582(c)(1)(A), where previously only the BOP was so authorized.

***The First Step Act not only reduced the mandatory minimum penalties, but also changed the conditions under which they apply.***

Higher mandatory minimum penalties apply if the defendant has a prior conviction for a "serious drug felony" or for a "serious violent felony" and the prosecution files a notice of enhancement under 21 U.S.C. § 851. The defendant's prior convictions must meet the new definitions of "serious drug felony" or "serious violent felony." The defendant must have served a term of imprisonment of more than 12 months on the prior offense and must have been released within 15 years of the current federal offense. In addition, for any "serious drug felony" or a "serious violent

felony" based on 18 U.S.C. § 3559(c)(2), the offense must have been punishable by a term of imprisonment of 10 years or more.

The First Step Act changed the prior offenses that trigger the recidivist penalties (at 21 U.S.C. §§ 841 and 960) and reduced the length of those penalties. First, the Act both narrowed and expanded the type of prior offenses that trigger mandatory enhanced penalties. Prior to the Act, a defendant's sentence was enhanced if the defendant had been convicted of a prior "felony drug offense."[2] The Act narrowed the triggering prior offenses by replacing "felony drug offense" with "serious drug felony."[3] As a result, a defendant's prior drug offense qualifies as a predicate offense only if it was an offense of the type specifically defined in 18

---

[2]

The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). Certain state drug offenses that are classified as misdemeanors by the state but are punishable by imprisonment for more than one year qualify as a felony drug offense under this definition. See *Burgess v. United States*, 553 U.S. 124, 126–27 (2008).

[3]

A "serious drug felony" is defined as an offense described in 18 U.S.C. § 924(e)(2)(A) for which the defendant served a term of imprisonment of more than 12 months and was released from any term of imprisonment within 15 years of the instant offense. Section 924(e)(2)(A) defines "serious drug offense" as an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), chapter 705 of title 46 (Maritime Law Enforcement), or under State law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment is ten years or more.

U.S.C. § 924(e)(2)(A), the defendant served a term of more than 12 months' imprisonment for that offense, and the offender was released within 15 years of the instant offense. Prior to the Act, any drug offense punishable by more than one year of imprisonment qualified as a predicate offense, regardless of the length of time imposed or served for that offense.

Second, the Act reduced the length of some of the enhanced penalties. Before the First Step Act, offenders who otherwise qualified for the ten-year mandatory minimum penalty were subject to an enhanced mandatory minimum penalty of 20 years if they had one qualifying prior  conviction, and a mandatory term of life imprisonment if they had two qualifying prior convictions. See 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1)(A)–(H). As demonstrated in Table 1, the First Step Act reduced the 20-year mandatory minimum penalty (for offenders with one prior qualifying offense) to 15 years and the life mandatory minimum penalty (for two or more prior qualifying offenses) to 25 years. Pub. L. No. 115–391, § 401. As they were before the First Step Act, offenders who otherwise qualify for a five-year mandatory minimum penalty are subject to an increased statutory range of ten years to life imprisonment if they have a qualifying prior conviction. See 21 U.S.C. §§ 841(b)(1)(B), 960(b)(2)(A)–(H). The First Step Act did not amend the length of the penalties imposed at section 841(b) (1)(B) or 960(b)(2). As a result, a qualifying

predicate offense (a "serious drug offense" or a "serious violent felony") increases a five-year penalty to ten years.

Table 1. Common 851 Enhancements

| Provisions | Statutory Penalty | Common 851 Enhancements | |
|---|---|---|---|
| | | Before First Step Act | After First Step Act |
| 21 U.S.C. § 841(b)(1)(A) | 10-year mandatory minimum | 20-year mandatory minimum *after one* prior "felony drug offense" conviction | 15-year mandatory minimum *after one* prior "serious drug" or "serious violent" felony conviction |
| | | Life mandatory minimum *after two or more* prior "felony drug offense" convictions | 25-year mandatory minimum *after two or more* prior "serious drug" or "serious violent" felony convictions |
| 21 U.S.C. § 841(b)(1)(B) | 5-year mandatory minimum | 10-year mandatory minimum *after one* prior "felony drug offense" conviction | 10-year mandatory minimum *after one* prior "serious drug" or "serious violent" felony conviction |
| 21 U.S.C. § 841(b)(1)(C) | 20-year statutory maximum | 30-year statutory *maximum after one* prior "felony drug offense" conviction | 30-year statutory *maximum after one* prior "felony drug offense" conviction |

Some provisions, 21 U.S.C. §§ 841(b)(1)(C) and 960(b)(3), do not include a statutory mandatory minimum penalty but provide for an enhanced statutory maximum penalty. The First Step Act amended 21 U.S.C. §§ 841(b)(1)(A) & (B) and 960(b)(1) & (b)(2) only. Thus, the enhanced statutory maximum penalties provided for at sections 841(b)(1)(C) and 960(b)(3) are unchanged and are still triggered by a prior "felony drug offense," rather than a "serious drug felony" or "serious violent felony."

Although the recidivist drug enhancements are found in the penalty provisions of various drug statutes, they are commonly referred to as "851 enhancements."

Consistent with common usage, this publication thus uses the term "851 enhancement" to refer to the increased penalty applicable to offenders who have been convicted of a prior predicate offense. This publication explores offenders for whom an 851 information was filed and those for whom the 851 remained in place at sentencing, without consideration of whether the offender ultimately received relief from that penalty. Where this publication uses the term "applied at sentencing," it refers to cases in which the 851 information was not withdrawn by the government or found to not apply by the court. These offenders may, however, have received relief from the enhanced penalty as a result of the statutory safety valve, 18 U.S.C. § 3553(f), or for providing substantial assistance pursuant to 18 U.S.C. § 3553(e).

**B.**     **In Light of _United States v. Simmons_, 649 F.3d 237 (4th Cir.   2011), Collins' Prior Drug Conviction Does Not Qualify As A "Felony Drug Offense".**

In light of _United States v. Simmons_, 649 F.3d 237 (4th Cir. 2011), Collins' 1987 prior drug conviction in violation of California Statutes does not qualify as a "felony drug offense" under § 851 because Collins was only sentenced to 3 years' probation. Hence, 851 enhancement require a sentence exceeding 1 year or 12 months.

In _Simmons_, Jason Simmons pled guilty to federal drug trafficking, the district court held that his prior state conviction for marijuana possession, for which he faced

17

no possibility of imprisonment, was for an offense "punishable by imprisonment for more than one year," triggering a sentencing enhancement under the Controlled Substances Act. This enhancement doubled Simmons' minimum sentence. The Fourth Circuit affirmed in an unpublished opinion. See *United States v. Simmons*, 340 Fed.Appx. 141 (4th Cir.2009). However, the Supreme Court vacated that judgment and remanded the case to the Fourth Circuit for "further consideration in light of *Carachuri-Rosendo v. Holder*," 130 S. Ct. 2577 (2010). A panel of the Fourth Circuit then held that *Carachuri* did not require any change in our prior holding. See *United States v. Simmons*, 635 F.3d 140 (4th Cir. 2011). The Fourth Circuit voted to rehear the case *en banc*, and vacated Simmons' sentence and remanded for further proceedings.

Here, Collins' sentence cannot be enhanced under § 851 if he does not have at least 1 prior conviction of a "felony drug offense".

### C.   Collins is Entitled to An Evidentiary Hearing So That Collins May Further Prove His Meritorious Ground for Relief, Resolve Any Disputed Facts, and Expand An Incomplete Record.

Here, Collins urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First

Step Act of 2018. ECF No. 1449. He asks the court to reduce his current sentence of 240 months to time served. The government asserts that Stanback is ineligible for consideration of a reduction in his sentence, and in the alternative, that if he is eligible for consideration, a further reduction of his sentence is not warranted. The government suggests that the only relief to which Stanback is entitled is a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

## 1.    **Drug Weight**

The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 4.5 kilograms of cocaine base.

**Note:** Collins was indicted for conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine.

19

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id.* at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair

Sentencing Act was enacted. Nonetheless, Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.

*Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. In this case, Collins pled guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine. Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on 132 kilograms of grams of cocaine referenced in the PSR. Thus, although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); *United States v. Dodd*, No. 3:03-CR-18-3, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth

*Apprendi* and *Alleyne* are binding on this Court for sentencings held today."); *United States v. Davis*, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2d Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); see also *United States v. Laguerre*, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

### B.    Discretion of the Court

The court under 18 U.S.C. § 3582(c)(1)(B) which states that "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute", i.e., the First Step Act of 2018, Section 404, "Application of the Fair Sentencing Act", and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, ordered that the motion be denied. Collins is currently serving a 240-month sentence.

See *United States v. Haynes*, No. 8:08-CR-441, 2019 WL 1430125 (D. Neb., Mar. 29, 2019) appeal docketed, No. 19-1701 (8th Cir. Apr. 4, 2019). There, a defendant was indicted and pleaded guilty to possession with intent to deliver 5 grams or more of cocaine base. In the plea agreement, he agreed to be held responsible for

20-35 grams of cocaine base, and the PSR said he was responsible for at least one

ounce (28.35 grams) of cocaine base. *Id.* at *1. He sought relief under the First Step

Act based on his plea of guilt to the 5 grams of cocaine base. *Id.* at *2. The court

denied relief, finding that if the Fair Sentencing Act had been in effect at the time the

defendant was indicted, the government would have charged him under 18 U.S.C. §

841(b)(1)(B)(iii). This approach was rejected by the court in *Dodd*, 372 F.Supp.3d at

799, 2019 WL 1529516 at *3. There, the court found that such a speculative claim is

insufficient and that many things might have been different at the time the defendant

was indicted and tried. The court was unwilling to engage in "a series of

hypotheticals about what might have happened had aspects of the case been

fundamentally altered." *Id.* See also *United States v. Pierre*, 372 F.Supp.3d 17, 2019

WL 1495123 (D.R.I. Apr. 5, 2019) (holding that in determining eligibility under the

First Step Act, court should look to whether the offense of conviction was modified

by the Fair Sentencing Act of 2010 and should not delve into the particulars of the

record to determine how the defendant committed the offense of conviction or how

the facts would have hypothetically affected the charges brought under the new

statutory scheme).

 The Fourth Circuit Court finds the reasoning in *Dodd* and *Pierre* persuasive.

While it is possible that the government would have proceeded against *Stanback*

under 18 U.S.C. § 841(b)(1)(A), it also is possible that it would not have chosen to do so. The government could have determined that evidence was insufficient to prove the quantity beyond a reasonable doubt, or if it did indict him on that amount, the parties might have entered into a plea agreement involving less than 280 grams of cocaine base. The retroactive assumption suggested by the government simply is too speculative a basis on which to determine Stanback's eligibility for a sentence reduction. Thus, the Fourth Circuit declines to assume that Stanback would have been charged and convicted of possessing more than 280 grams of cocaine base if the Fair Sentencing Act had been in effect at the time he was convicted.

The only guidance Congress has given regarding the authorized extent of Section 404 relief is that the district court may impose a reduced sentence "as if" the FSA's reduced crack cocaine penalties "were in effect at the time the covered offense was committed." This broad grant of resentencing authority contains one implied limitation, that the court cannot impose a sentence lower than the statutory mandatory minimum applicable under the FSA — the current statutory penalties. For example, if a defendant was convicted at trial in 2009 where the jury found he distributed "50 grams or more" of crack cocaine, his post-FSA mandatory minimum sentence would be five years, because that is the post-FSA minimum for an offense involving 28 grams or more but less than 280 grams of crack. 21 U.S.C. § 841(b)(1)(B)(iii). In that

case, the district court, acting pursuant to Section 404, could not reduce the defendant's sentence below five years.

### C.    18 U.S.C. § 3582(c)(2) and USSG Amendment 782

Without the 851 enhancement, Collins would be eligible to receive a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) and USSG Amendment 782 as follows:

a.    *Amendment 782 of the United States Sentencing Guidelines*

In April of 2014, the U.S. Sentencing Commission voted to lower the federal drug sentencing guidelines by two (2) levels and sent USSG Amendment 782 to Congress which became effective on November 1, 2014. The Commission then considered whether to make this relief retroactive to current prisoners who have already been sentenced. On July 18, 2014, the Commission voted for full retroactivity of USSG Amendment 782.

b.    *Modification of Sentence pursuant to 18 U.S.C. § 3582(c)(2)*

"In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guidelines provisions that were applied when the defendant was sentenced, and shall leave all other guideline application decisions unaffected." USSG § 1B1.10(b)(1).

After the district court determines what the modified sentence would be, the district court is required to consider any applicable factors under 18 U.S.C. § 3553 in deciding whether a sentence modification is "warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S.Ct. at 2692. "Because reference to § 3553 is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into preliminary re-sentencing proceedings." *Id.* Thus, even if Collins qualifies for sentence modification under the first step of the analysis, the decision whether to ultimately grant a modification is left to the sound discretion of the trial court. See *Dillon*, 130 S.Ct. at 2692.

Applying the Act and USSG Amendment 782 calculation to this case, Collins' Total Offense Level will be reduced to level 30. See also 2016 Sentencing Guidelines, indicating that "At least 5 KG but less than 15 KG of Cocaine" calls for a Base Offense Level of 30, pursuant USSG § 2D1.1(c)(5). Based upon a Total Offense Level of 34 (after reduction and increase discussed in Part I. B. 3.), in Criminal History Category of I, the guideline imprisonment range is 151 to 188 months. Collins asserts that he must be resentenced to 151 months– absent the 851 enhancement in accordance with 2013 Holder Memoranda.

Should the Court find Collins' 851 enhancement appropriate, Collins argues that his sentence must be reduced to 180 months, pursuant to the Act reducing the 20-year mandatory minimum sentence to 15 years. See 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1)(A).

He therefore requests this Court order a hearing to impose a reduced sentence under the FSA's applicable statutory range, i.e. the current statutory penalties. Collins requests this Court order an updated presentence report so that his sentencing guidelines may be recalculated in accordance with law. At such a hearing, all the relevant statutory sentencing factors under 18 U.S.C. § 3553(a) will be addressed in order to achieve a sentence that is sufficient but not greater than necessary.

In *Holguin-Hernandez v. United States*, (No. 18–7739) (S. Ct. Feb. 26, 2020), the Justices through a unanimous opinion said about as little as possible while ruling for the defendant.  Here are some key excerpts from Justice Breyer's opinion for the Court:

> Congress has instructed sentencing courts to impose sentences that are "'sufficient, but not greater than necessary, to comply with'" (among other things) certain basic objectives, including the need for "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 581 U.S. ___, ___ (2017)... If the trial court follows proper procedures and gives adequate consideration to these and the other listed factors, then the question for an appellate court is simply, as here, whether the trial court's chosen sentence was "reasonable" or whether the judge instead "abused his discretion in determining that the §3553(a) factors supported" the sentence imposed....

Judges, having in mind their "overarching duty" under §3553(a), would ordinarily understand that a defendant [advocating for a shorter sentence] was making the argument (to put it in statutory terms) that the shorter sentence would be "'sufficient'" and a longer sentence "'greater than necessary'" to achieve the purposes of sentencing. Nothing more is needed to preserve the claim that a longer sentence is unreasonable. We do not agree with the Court of Appeals' suggestion that defendants are required to refer to the "reasonableness" of a sentence to preserve such claims for appeal. The rulemakers, in promulgating Rule 51, intended to dispense with the need for formal "exceptions" to a trial court's rulings.... The question is simply whether the claimed error was "brought to the court's attention." Rule 52(b). Here, it was.

The Court of Appeals properly noted that, to win on appeal, a defendant making such a claim must show that the trial court's decision was not "reasonable." *Gall*, 552 U.S., at 56. But that fact is not relevant to the issue here. Our decisions make plain that reasonableness is the label we have given to "the familiar abuse-of-discretion standard" that "applies to appellate review" of the trial court's sentencing decision. *Id.*, at 46 (emphasis added); ... The substantive standard that Congress has prescribed for trial courts is the "parsimony principle" enshrined in §3553(a). *Dean*, 581 U.S., at ___ (slip op., at 4). A defendant who, advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is "greater than necessary" has thereby informed the court of the legal error at issue in an appellate challenge to the substantive reasonableness of the sentence. He need not also refer to the standard of review.

The Government and amicus raise other issues. They ask us to decide what is sufficient to preserve a claim that a trial court used improper procedures in arriving at its chosen sentence. And they ask us to decide when a party has properly preserved the right to make particular arguments supporting its claim that a sentence is unreasonably long. We shall not consider these matters, however, for the Court of Appeals has not considered them. We hold only that the defendant here properly preserved the claim that his 12-month sentence was unreasonably long by advocating for a shorter sentence and thereby arguing, in effect, that

28

this shorter sentence would have proved "sufficient," while a sentence of 12 months or longer would be "greater than necessary" to "comply with" the statutory purposes of punishment. 18 U.S.C. §3553(a).

See *Holguin-Hernandez v. United States*, (No. 18–7739) (S. Ct. Feb. 26, 2020).

It is essential to also note that Collins have no incident reports during his entire time in prison. Further, since Collins' incarceration began, he has taken numerous steps to attempt to improve himself in "post-conviction rehabilitation." This effort and its obvious achievements should be welcome news to this Honorable Court due to the fact that Collins has taken continuous strides to prepare himself for reentry back into society to be a law abiding citizen.

Based on the above, Collins meets all of the qualifications for those eligible for relief under the First Step Act of 2018, 2013 Holder Memoranda advises against strict application of the 851 enhancement to non-violent offenders like Collins, and retroactive USSG Amendment 782, and he is not deemed a Public Safety Factor.

Accordingly, this motion should be granted.

### III.    CONCLUSION

For the above and foregoing reasons, Collins' sentence must be vacated for resentencing pursuant to the First Step Act of 2018, 2013 Holder Memoranda advises against strict application of the 851 enhancement to non-violent offenders like Collins, and retroactive USSG Amendment 782. In the alternative, an evidentiary

29

hearing should be held so that Collins may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: October 15, 2020.

DAMON L. COLLINS
REG. NO. 62364-112
FCI BASTROP
FEDERAL CORR. INSTITUTION
P.O. BOX 1010
BASTROP, TX 78602
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on October ___, 2020, I mailed a true and correct copy of the above and foregoing Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act via U.S. Mail, postage prepaid, to Michael Leo Ivory, Assistant U.S. Attorney at U.S. Attorney's Office, 700 Grant Street, Suite 4000 Pittsburgh, PA 15219.

DAMON L. COLLINS