IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 09-105 |
| | ) | |
| DAMON COLLINS | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Michael Leo Ivory, Assistant United States Attorney for said District, and respectfully submits this Response in Opposition to Defendant Collins' Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and brief in support thereof.  Doc. No. 2867.

Collins seeks a reduction in his prison sentence under 18 U.S.C. § 3582(c)(1)(A), often described as the "compassionate release" statute, based on the following grounds: (1) the application of the enhanced penalty authorized by 21 U.S.C. § 851 was erroneous; (2) the state felony drug conviction upon which the enhanced penalty was predicated is not a "serious drug felony" under 21 U.S.C. § 802(57); and (3) that he is eligible for relief under Amendment 782 of the Sentencing Guidelines and various provisions of the First Step Act. For the reasons set forth below, this Court should deny the motion.

To begin, the issues raised by Collins have nothing to do with COVID-19 and any impact it may have on his health or susceptibility for contracting the virus. His request for a compassionate release is nothing more than thinly-guised motion for collateral relief and should be treated as such. None of the issues advanced in request warrant the collateral relief requested.

Secondly, there is absolutely no evidence that Collins exhausted the requisite administrative remedies.  Finally, a reduction in Collins' sentence would not be consistent with § 1B1.13, as the defendant is a danger to the safety of the community, and would not be consistent with the § 3553(a) factors as required by § 3582(c)(1)(A).

Because Collins has not met the statutory requirements for a reduction in sentence under § 3582(c)(1)(A), his motion must be denied.

## ARGUMENT

### I.   Introduction

18 U.S.C. § 3582(c)(1)(A) – as amended by the First Step Act of 2018 – allows a court to reduce a term of imprisonment based on "extraordinary and compelling" circumstances, but only:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after* the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]

18 U.S.C. § 3582(c)(1)(A) (emphasis added).  There is no evidence that Collins has complied with the statute's requirement that a compassionate release request has to be first made to the inmate's warden.  Afterwards, if the motion is denied, the inmate is then required to exhaust his administrative remedies or wait 30 days following its submission before he can file a motion for compassionate release with the sentencing court. *See United States v. Raia*, 954 F.3d 594, 596 (3d Cir. 2020); *United States v. Zukerman*, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020).

Collins' motion does not state if or when he filed a compassionate request with his warden. "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992). Due to this lack of information and any supporting documentation, the motion should be dismissed. *See United States v. Hassan*, 2019 WL 6910068, at *1 (D. Minn. Dec. 19, 2019) (an inmate "must

show that [he] submitted a request for compassionate release and that 30 days have lapsed")'

*United States v. Bolino*, 202 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) ("a defendant cannot

proceed with his motion without submission of such proof."). According to the Third Circuit, the

failure to comply with the exhaustion requirement set forth in § 3582(c)(1) constitutes a "glaring

roadblock" to judicial review. *Raia*, 954 F3d at 596. Because Collins has not provided this Court

with any proof that he even made a request to his warden in the first instance, or has satisfied the

timing requirements in the second, his motion should be dismissed at this time. If Collins made a

request of his warden and the requisite time period has passed, then he should prove it. If he did

not, then he should submit a request with his warden and wait in accordance with § 3582(c)(1).

## II.   Collins Has Not Shown "Extraordinary and Compelling Reasons" for Release as Required by 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c), created by the Sentencing Reform Act of 1984, provides that "[t]he

court may not modify a term of imprisonment that has become final except" in limited

circumstances.   As relevant here, if BOP or the defendant files a timely motion under

§ 3582(c)(1)(A) with the district court, the court

> may reduce the term of imprisonment . . . *after considering the factors set forth in section 3553(a) to the extent that they are* applicable, *if it finds that*–
>
> > (i) *extraordinary and compelling reasons warrant such a reduction*…
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*….

18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Section 603 of the First Step Act of 2018 amended

§ 3582(c)(1)(A) to allow the court to act "upon motion of the defendant" in addition to "upon

motion of the Bureau of Prisons," assuming timeliness and the other conditions are met.  Pub. L.

115-391, § 603(b)(1), 132 Stat. 5194, 5239.  However, the First Step Act did not change the

substantive definition of "extraordinary and compelling reasons."

The Sentencing Reform Act of 1984 authorized the Sentencing Commission to define "extraordinary and compelling reasons." <u>See</u> Pub. L. 98-473, § 217(a), 98 Stat. 1837, 2019 (enacting 28 U.S.C. § 994). The Commission has fulfilled these tasks through its policy statement at U.S.S.G. § 1B1.13 and its application notes. The policy statement echoes § 3582(c)(1)(A)'s requirement that the court determine that "extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13(1)(A). The court must also find that "the defendant is not a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).[1]

Application Note 1 to U.S.S.G. § 1B1.13 sets forth the "extraordinary and compelling reasons" that may justify release under § 3582(c)(1)(A). "[E]xtraordinary and compelling reasons" include "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1. A defendant must have a *current* illness, such as a "serious physical or medical condition," to meet these criteria. The risk of contracting a disease *in the future* does not, on its own, satisfy subdivision 1(A).

As noted, Collins' request for a compassionate release is based solely on legal claims and not on his susceptibility for contracting COVID-19. He speculates that if he had been sentenced today, his sentence would be dramatically lower than the one previously imposed by this Court in February 2014. This claim is based on the following contentions: (1) that under the so-called

---

[1]     Although the body of the Guideline states that a court may act "[u]pon motion of the Director of the Bureau of Prisons," § 1B1.13, and therefore does not yet include the procedural change made by the First Step Act, that discrepancy is separate from the Application Note's definition of "extraordinary and compelling circumstances." Thus, the Court should continue to rely upon the Application Note's guidance in evaluating "extraordinary and compelling circumstances."

Holder Memo, the government would not seek to enhance the applicable mandatory minimums pursuant to 21 U.S.C. § 851; (2) this Court committed error under 21 U.S.C. § 851(b) by failing to conduct a colloquy; (3) the conviction upon which the government based its notice pursuant to 21 U.S.C. § 851 is not a "serious drug felony" under the First Step Act; (4) the applicability of Section 404 of the Fair Sentencing Act; and the (5) applicability of Amendment 782 to the Sentencing Guidelines to his case. The convergence of these disparate factors, according to Collins, warrant relief in a sentence of time served. Collins is wrong for many reasons and this Court should deny his request.

Collins was charged at Count One with conspiring to distribute five kilograms or more of cocaine and applicable mandatory minimum called for a term of imprisonment of at least 10 years' imprisonment. 21 U.S.C. § 841(b)(1)(A). On December 28, 2012, the government filed a notice pursuant to 21 U.S.C. § 851, the effect of which doubled the applicable mandatory minimum sentence to 20 years' imprisonment (Doc. No. 1276). The notice was predicated upon Collins' California 1988 state felony conviction for sale of cocaine (Doc. No. 1276-1; PSR ¶ 33).

Subsequently, on August 12, 2013, then Attorney General Eric Holder issued a document entitled "Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases" (the Holder Memo). This document set forth the policy for charging mandatory minimum sentence for "low-level, drug offenders." *United States v. Chambers*, 2015 WL 1282915, at *8 (N.C. Cal. Aug. 19, 2015). Collins contends that under the criteria set forth in the Holder Memo, the government would not now today have sought application of the enhanced penalties. His reliance on the Holder Memo is misplaced for a number of reasons.

First, the Holder Memo was supplanted by the memorandum issued by then Attorney General Jeff Sessions on May 10, 2017. See *United States v. Crowder*, 2019 WL 2296588, at *5 n.26 (M.D. Pa. May 30, 2019). The Sessions Memo directs prosecutors to "charge and pursue the most serious, readily provable offenses" and defines the "most serious offenses" as "those that carry the most substantial guidelines sentence, including mandatory minimum sentences." *Id.* Based on the Sessions Memo, the government would have filed a 21 U.S.C. § 851 notice seeking the application of enhanced mandatory penalties in Collins' case had it be charged today.

Secondly, the Holder Memo was merely a policy statement and was not "intended to cerate or confer any rights, privileges, or benefits in any matter, case or proceeding." *Chambers,* 2015 WL 1282915 at *9. Policy statements or the Department of Justice's internal guidelines do not have the force of law. *United States v. Wilson*, 614 F.2d 1224, 1227 (9th Cir. 1980). Accordingly, the pronouncements set forth in the Holder Memo were merely precatory, not mandatory, and Collins has no right to have them applied in his case.

Finally, the Holder Memo did not apply to Collins in the first instance. Collins stipulated that he was responsible for 132 kilograms of cocaine and $2,100,000 in laundered drug money (PSR at ¶¶ 6 and 23). This Court further found that Collins was a leader or organizer for purposes of the Sentencing Guidelines (Doc. 2052 at 1-2). By its very terms, the Holder Memo applied low-level drug offenders. Collins was not a low-level drug offender.

Equally unavailing is Collins' contention that the application of the enhanced penalties is infirm because this Court purportedly failed to conduct some sort of colloquy pursuant to 21 U.S.C. § 851(b) (Doc. 2867 at 9). Under 21 U.S.C. § 851(b), the sentencing court should conduct a colloquy prior to the imposition of sentence to afford the defendant to affirm or deny the prior

sentence. *See, e.g., United States v. Wright*, 419 F. App'x 251, 255-56 (3d Cir. 2011). Collins contends that this Court failed to conduct such an inquiry.

Whether this Court did or failed to conduct a colloquy is irrelevant. The conviction upon which the enhancement was based occurred in 1988 (Doc. 1276-1). The § 851 notice was filed in 2012 or 24 years later. According to 21 U.S.C. § 851(e), a defendant may not challenge the validity of the prior conviction which occurred more than five years before the date of the § 851 notice alleging the prior conviction. Given this, Collins was not entitled to a colloquy under § 851(b). "Multiple circuits have held that a district court is not required to adhere to the rituals of § 851(b) where a defendant, as a matter of law, is precluded from attacking the conviction forming the basis of the enhancement." *Irrizari v. United States*, 153 F.Supp.2d 722, 729-30 (E.D. Pa. 2001) (citing *United States v. Flores*, 5 F.3d 1070, 1081-82 (7th Cir. 1993); *United States v. Housley*, 907 F.2d 920, 921-22 (9th Cir. 1990); *United States v. Nanez*, 694 F.2d 405, 412-13 (5th Cir. 182).

The remainder of Collins' claims that his sentence would have been lower due to myriad changes in the law occurring after his sentence was imposed. Specifically, he claims that under Section 401 of the First Step Act that his state drug felony conviction no longer qualifies as a "serious drug felony" and he is therefore no longer subject to the enhanced penalties authorized by 21 U.S.C. §§ 841(b)(1)((A) and 851. Collins also contends that he is entitled to a compassionate release because he qualifies for relief under Amendment 782 to the Sentencing Guidelines. He is wrong for the following reasons.

It is settled that a "'judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillion v. United States*, 560 U.S. 817, 825 (2010) (quoting 18 U.S.C. § 3582(b)). According to 18 U.S.C. § 3582(c), a "court may not modify" a term of imprisonment except in

specific enumerated circumstances.  It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Productions*, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)).  Section 3582(c) accordingly has been understood as providing express, but limited, statutory authorization to modify otherwise final sentences.  Brown's position ignores the principle that finality is an integral component of criminal judgments, which is "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, once a court pronounces sentence and the judgment becomes final, the court has no inherent authority to reconsider or alter the sentence. Rather, it may do so only in accordance with statutory authority. *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008).

The implicit upshot of Collins' request is that this Court has broad, untrammeled discretion to determine what constitutes an extraordinary or compelling reason to warrant a compassionate release under § 3582(c)(1)(A) to include non-retroactive, post-sentencing developments.  Federal statutes do not permit courts to modify prison sentences except in narrowly limited circumstances. Pursuant to § 3582(c)(1)(A) and 28 U.S.C. § 994(t), the Sentencing Commission and the BOP have defined the "extraordinary and compelling reasons" for which a court may grant compassionate release.  *See* U.S.S.G. § 1B1.13 & app. n.1; Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).  While those reasons can include a "serious physical or medical condition" that substantially reduces the defendant's "ability to provide self-care" in prison – such as by significantly increasing the risk of major complications from COVID-19 – Collins has not delineated anything in his motion or supporting briefs anything that meets that definition.  And the

mere possibility of contracting COVID-19 in the future – a generalized risk shared by all members of society – does not meet the Commission's definition either.  The First Step Act of 2018 does not change the Commission's definition or allow this Court to ignore that definition.  The risk of COVID-19 has prompted BOP to take extensive precautionary measures, but that risk alone does not and should not authorize compassionate release under the relevant statutes.  Johnson's motion should be denied.

### A.   Pursuant to Statutory Authorization, the Sentencing Commission Has Defined "Extraordinary and Compelling Reasons" for Release.

18 U.S.C. § 3582(c), created by the Sentencing Reform Act of 1984, provides that "[t]he court may not modify a term of imprisonment that has become final except" in limited circumstances.  As relevant here, if BOP or the defendant files a timely motion under § 3582(c)(1)(A) with the district court, the court

> may reduce the term of imprisonment . . . *after considering the factors set forth in section 3553(a)* to the extent that they are applicable, *if it finds that*–
>
>> (i) *extraordinary and compelling reasons warrant such a reduction*…
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*….

18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Section 603 of the First Step Act of 2018 amended § 3582(c)(1)(A) to allow the court to act "upon motion of the defendant" in addition to "upon motion of the Bureau of Prisons," assuming timeliness and the other conditions are met.  Pub. L. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.  However, the First Step Act did not change the substantive definition of "extraordinary and compelling reasons."

The Sentencing Reform Act of 1984 authorized the Sentencing Commission to define "extraordinary and compelling reasons."  <u>See</u> Pub. L. 98-473, § 217(a), 98 Stat. 1837, 2019 (enacting 28 U.S.C. § 994).  The Commission must issue policy statements regarding any "aspect

of sentencing or sentence implementation" that furthers the purposes of 18 U.S.C. § 3553(a)(2), including "the appropriate use of . . . the sentence modification provisions set forth in" § 3582(c). 28 U.S.C. § 994(a)(2)(C).  Specifically, 28 U.S.C. § 994(t) provides (emphasis added):

> **The Commission**, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, ***shall describe what should be considered extraordinary and compelling reasons for sentence reduction***, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Commission has fulfilled these tasks through its policy statement at U.S.S.G. § 1B1.13 and its application notes.  The policy statement echoes § 3582(c)(1)(A)'s requirement that the court determine that "extraordinary and compelling reasons warrant the reduction."   U.S.S.G. § 1B1.13(1)(A).  The court must also find that "the defendant is not a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13(2).  Although the body of the Guideline states that a court may act "[u]pon motion of the Director of the Bureau of Prisons," § 1B1.13, and therefore does not yet include the procedural change made by the First Step Act, that discrepancy is separate from the Application Note's definition of "extraordinary and compelling circumstances."

Application Note 1 to U.S.S.G. § 1B1.13 sets forth the "extraordinary and compelling reasons" that may justify release under § 3582(c)(1)(A).  As long as a defendant is not a danger to the safety of any other person or to the community, "extraordinary and compelling reasons exist under any of" four sets of circumstances, described in subdivisions.  Subdivision (A) provides:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer,

amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. note 1. A defendant must have a *current* illness, such as a "serious physical or medical condition," to meet these criteria. The risk of contracting a disease *in the future* does not, on its own, satisfy subdivision 1(A).

Subdivision (B) of the Application Note covers certain inmates who experience a serious deterioration in health due to age, while subdivision (C) covers "family circumstances" such as the incapacitation of a defendant's spouse. Finally, subdivision (D) provides:

(D) Other Reasons.—***As determined by the Director of the Bureau of Prisons***, there exists in the defendant's case ***an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)***.

U.S.S.G. § 1B1.13 app. note 1 (emphasis added).

As contemplated by subdivision (D), a Program Statement from the Bureau of Prisons describes "extraordinary and compelling reasons" that may support compassionate release. Bureau of Prisons, Program Statement 5050.50. While the medical reasons described in the BOP's list differ in some respects from those in § 1B1.13's Application Note, they also require that the defendant have a *current* medical condition, such as a "terminal, incurable disease," or "an incurable, progressive illness" that leaves an inmate "[c]ompletely disabled" or "[c]apable of only limited self-care." Id. at 4-5.

The Third Circuit has recognized that U.S.S.G. § 1B1.13 "lists circumstances that qualify as extraordinary and compelling under § 3582(c)(1)(A), *thereby restricting district courts*." *United States v. Berberena*, 694 F.3d 514, 521 n.10 (3d Cir. 2012) (emphasis added).   Such restrictions are within the Commission's authority and pose no separation-of-powers concerns. See id. at 520-26 (discussing U.S.S.G. § 1B1.10).   Likewise, the Supreme Court has found that § 3582(c)(2), a related paragraph that governs retroactive Guideline amendments, "giv[es] courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission" in U.S.S.G. § 1B1.10, and therefore does not authorize "a plenary resentencing proceeding." *Dillon*, 560 U.S. at 825-26.   Under § 3582(c)(1)(A), as under § 3582(c)(2), the Commission has specified only limited reasons for a reduction.

In particular, Application Note 1(D)'s reference to "extraordinary and compelling" reasons "determined by the Director of the Bureau of Prisons" does not authorize defendants or this Court to create additional reasons.   Subdivision (D) delegated some authority to the BOP to supplement the limited and specific reasons set out in subdivisions (A) through (C), but that delegation does not extend to the courts.   "Congress patently did not" expand the definition of "extraordinary and compelling reasons" in the First Step Act, and courts therefore "must follow the policy statement as it stands." *United States v. Lynn*, Crim. No. 89-72-WS, 2019 WL 3805349, at *2-4 (S.D. Ala. Aug. 13, 2019); *see also, e.g.*, *United States v. Nasirun*, No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020); *United States v. Shields*, No. 12-cr-00410, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019).   Courts must abide by the "express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019).

Despite the Commission's clear authority to define the term "extraordinary and compelling reasons," some courts have concluded that § 1B1.13 is no longer an "'applicable' policy statement" after the First Step Act, and that a court may make its own "independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *United States v. Rodriguez*, No. 2:03-cr-271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020); *see also, e.g., United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 2046086, at *3 (D. Me. July 11, 2019); *United States v. Cantu*, No. 1:05-cr-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019). That is incorrect. The Act's change to the procedure for seeking compassionate release (*who* may file a motion) does not alter the detailed substantive standard (*when* a motion may be granted) set forth by Congress, the Sentencing Commission, and the BOP. Neither should the Act be read as silently repealing the Commission's authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t).

Section 1B1.13's reference to a "motion of the Director of the Bureau of Prisons" does not change this analysis, even though such a motion can now be brought by the defendant as well. The Commission's specific and detailed definition of "extraordinary and compelling circumstances" is contained in Application Note 1, not the body of the Guideline itself, and is fleshed out by BOP's Program Statement 5050.50. The First Step Act did not expressly alter that substantive standard, and should not be read to do so implicitly: Congress does not "hide elephants in mouseholes." *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001). Thus, a member of this Court recently noted – and a defendant seeking compassionate release agreed – that a reduction "must be consistent with the policy statements issued by the Sentencing Commission" and that "[t]he relevant policy statement under the Guidelines is Section 1B1.13." *United States v. Winckler*, Crim. No. 13-318, Dkt. No. 57, at 4 (W.D. Pa. Apr. 3, 2020).

This conclusion is consistent with what the First Step Act did not change. The Act left in place the requirement that the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The Act also left intact § 3582's requirement that any sentence modification be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Act also left in place the Sentencing Commission's role as arbiter, through its policy statements, of the "appropriate use" of § 3582(c). See 28 U.S.C. § 994(a)(2).

Non-retroactive, post-sentencing changes in the law cannot constitute extraordinary and compelling reasons to reduce a sentence. Collins' claim that he would receive a lower sentence is based on his contention that his California cocaine felony conviction is not a "serious drug felony" under the Section 401 of the First Step Act. Doc. No. 1286. This claim is irrelevant because Collins was sentenced in 2014, years before Section 401 became effective. Section 401 of the First Step Act does not apply retroactively to defendants who were sentenced before the enactment of that statute. *See United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020); *United States v. Aviles*, 938 F.3d 503, 510-11 (3d Cir. 2020); *United States v. Mainor*, 2019 WL 3425063, at *3 (E.D. Pa. July 30, 2019) ("Section 401 was explicitly written so as not be retroactive."). To grant a compassionate release on the basis that extraordinary and compelling reasons exist because Congress to decided not make a law retroactive "would effectively usurp Congress' legislative role in [that] regard." *United States v. Brown*, 2020 WL 4345077, at *6 (W.D. Pa. July 29, 2020). *See also Hodge*, 948 F.3d at 162 ("when a statute imposes a newer more lenient penalty, the change applies retroactively only if Congresses intends it to.") (citing *Dorsey v. United States*, 567 U.S. 260, 272 (2012)).

Under the commentary relevant to U.S.S.G. § 1B1.3 "post-sentencing developments" are not identified "as an 'extraordinary and compelling' reason warranting a sentence reduction." *United States v. Salada*, 807 F. App'x 816, 820 ( 10th Cir. 2020). This makes sense because most sentencing decisions, even the watershed ones, are not retroactively applied to final sentences. *See also United States v. Lloyd*, 407 F.3d 608 (3d Cir. 2005) (Supreme Court's decision in *Booker v. United States*, 543 U.S. 220 (2005) not retroactive*); United States v. McBride*, 283 F.3d 612 (3d Cir. 2002) (*Apprendi v. New Jersey*, 530 U.S. 466 (2000) is not retroactive under 18 U.S.C. § 3582). Title 18 U.S.C. § 3582 is a jurisdictional statue and simply does not allow or authorize a sentence reduction based on new case law or post-sentencing developments.

Assuming arguendo that Section 401 applied retroactively, Collins' state felony conviction would constitute a serious drug felony conviction. When Collins was charged and convicted the application of the enhanced penalties was contingent or predicated on the existence of a prior felony drug conviction. *See United States v. Baptiste*, 2020 WL 6582133, at *3 (11th Cir. Nov. 10, 2020); 21 U.S.C. § 802(44). Section 401(a) of the First Step Act changed the prior-conviction requirement to a "serious drug felony." A serious drug felony incorporates the definition of a "serious drug offense" found at 18 U.S.C. § 924(e) and also requires that the defendant: (1) "served a term of imprisonment of more than 12 months" and (2) was released "from any term of imprisonment" "within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57).

In 1998, Collins pleaded to a felony violation of violating California Health & Safety Code § 11352 (Doc. 1276-1). At that time, the maximum possible penalty for a violation of this statute was eleven years. See California Penal Code § 1170(a)(1). Accordingly, the offense qualifies as a serious drug offense under 18 U.S.C. § 924(e)(2)(ii). On July 19, 1988, Collins was sentenced "to

3 years in State Prison." Collins maintains that this conviction does not qualify because he actually served a three-year probationary term (Doc. No. 2867 at 17). He is wrong.

The phrase "a term of imprisonment" has been interpreted to mean "the sentence the judge imposes" or "the time the prisoner actually served" depending on the context. *Barber v. Thomas*, 560 U.S. 474, 484 (2010). The Eighth Circuit has held that within the context of 21 U.S.C. § 802(57), which defines "serious drug felony," "the phrase 'the offender served a term of imprisonment of more than 12 months'. . . refers to the sentence imposed, not the time served." *United States v. Corona-Verduzco*, 963 F.3d 720, 723 (8th Cir. 2020) (citing, *Barber*, 560 U.S. at 483). Accordingly, the three-year sentence imposed by the California court in Collins' case qualifies as a serious drug felony under 21 U.S.C. § 802(57).

The sentence also qualifies because Collins served more than a years' imprisonment during its execution. On July 17, 1988, Collins' probation was revoked and he was sentenced to imprisonment for three years (PSR at ¶ 33). According to the Presentence Report he was imprisoned for 382 days, which is more than 12 months (Id.). Collins was paroled on December 8, 1989 and the cocaine conspiracy in this matter began in 2000 (Id.).

Collins' reliance on Amendment to 782 to the Sentencing Guidelines is also misplaced. Amendment 782 'reduced the offense levels assigned to most drug quantities under U.S.S.G. § 2D1.1(c) by two levels." *United States v. Ware*, 641 F. App'x 108, 109 (3d Cir. 2016). Collins, however, was not sentenced under the Sentencing Guidelines; he was sentenced pursuant to the applicable mandatory minimum sentence and under these circumstances this Court cannot reduce the sentence pursuant to Amendment 782. *See United States v. Mainor*, 725 F. App'x 85, 86 (3d Cir. 2018); *United States v. Oritz-Vega*, 744 F.3d 869, 873 (3d Cir. 2014) ("[I]f a defendant is

subjected to a mandatory minimum, he or she would not be given a sentence 'based on a sentencing range that has subsequently been lowered.'").

The fact that a criminal defendant cannot qualify for relief under a relevant, pertinent, controlling, and otherwise applicable means for relief cannot constitute an extraordinary and compelling reason for alternative relief under 18 U.S.C. § 3582(c). To hold otherwise, would render the limited nature of § 3582 superfluous and make it a nullity.

Title 18 U.S.C. § 3582 was intended as a limited exception to the finality of criminal judgments and sentences. It provides the district courts the ability to modify a final sentence only in certain, discrete circumstances. It was not intended to provide the courts the unfettered authority to modify or reduce a final sentence for any reason. And yet, that is what Collins would have this Court do. The "compassionate release provision is not an end-run around the Commission's authority to make certain guideline changes not retroactive or Congress's decisions to reduce sentences for some crimes, but not others, or a means to redress perceived disparities with other sentenced defendants." *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 7, 2019). Finally, in *United States v. Handerhan*, 789 F.3d 924, 925-26 (3d Cir. 2019), the Third Circuit specifically noted that changes in the law or the sentencing guideline that were made retroactive could not form a basis for relief under § 3582(c)(1)(A). Collins' claim is inconsistent with this authority.

As noted above, neither defendants nor this Court may create additional reasons for release under § 3582(c)(1)(A), beyond those determined by Congress, the Sentencing Commission, and the BOP.  "Congress patently did not" expand the definition of "extraordinary and compelling reasons" in the First Step Act, and courts therefore must follow the policy statement in § 1B1.13 "as it stands."  *United States v. Lynn*, Crim. No. 89-72-WS, 2019 WL 3805349, at *2-4 (S.D. Ala.

Aug. 13, 2019); *see also, e.g.*, *United States v. Eberhart*, No. 13-cr-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).   Whether or not the Sentencing Commission has recently amended § 1B1.13, the First Step Act did not change the detailed substantive standard for "extraordinary and compelling reasons" or silently repeal the Commission's sole authority to define that term.

By statute, the Sentencing Commission's definition of "extraordinary and compelling reasons" is binding when courts a request for compassionate release.  Section 3582's delegation of that power to the Commission is entirely appropriate: it furthers the goal of having a single nationwide standard for compassionate release (given the general principle of finality in criminal sentences), and respects the expertise of the Commission and BOP in determining that standard. Deference is especially important because BOP may release a prisoner to home confinement in appropriate circumstances as an alternative to compassionate release.

### III. Even If Collins Has Shown "Extraordinary and Compelling Reasons," Compassionate Release Is Not Appropriate Under the § 3553(a) Factors and § 1B1.13.

Collins' request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community under § 1B1.13 or otherwise merits release under the § 3553(a) factors.  Section 3582(c)(1)(A) requires that this Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" before it reduces a defendant's prison term.  Here, neither 1B1.13 nor the § 3553(a) factors continue to support the sentence this Court originally imposed, and the defendant's motion should be denied.

Collins has not present this Court with "extraordinary and compelling reasons" under the Sentencing Commission's definition. And even if he did, his request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.  This Court must find under § 1B1.13 that "the defendant is not a danger to the safety of any other person or to the community,

18

as provided in 18 U.S.C. § 3142(g)," and must also consider the § 3553(a) factors in determining whether a reduction is appropriate.  18 U.S.C. § 3582(c)(1)(A). Here, the defendant remains a danger to society; in addition, the § 3553(a) factors continue to support the sentence this Court originally imposed.

Collins was involved with what has been identified as the largest cocaine conspiracy prosecuted in the Western District of Pennsylvania. For close to 10 years, the conspiracy and its members were responsible for distributing over a thousand kilograms of cocaine worth millions of dollars. Under the terms of his plea agreement, Collins acknowledged responsibility for 132 kilograms of cocaine and laundering $2.1 million in drug proceeds. His criminality and involvement with the conspiracy resulted in the prosecution and conviction of his own mother (See Doc. No. 2052 at 2 n.2).

Collins also was a fugitive from justice for a period twenty months, which, as this Court held, hindered the timely prosecution of his case (Id. at 2-3). When his residence was searched, federal agents recovered a loaded semi-automatic pistol with an obliterated serial number and nearly $36,000 in drug proceeds (Id.). The nature and circumstance of the offense establish that Collins is a danger to the community.

Additional penalogical considerations warrant a denial of Collins' request. There can be no question that Collins' crimes were serious. Penalogical considerations such as retribution; protection of the public; and instillation of a respect for the law mandate the imposition of serious time for committing a serious crime.

### IV.  If the Court Orders Compassionate Release, It Should Allow BOP a Reasonable Period of Time for Quarantine and to Process and Screen Johnson Before Release.

Finally, if the Court orders Collins release under § 3582(c)(1)(A) – which, for all the reasons stated above, it should not – it should allow BOP to place him in a 14-day quarantine

period and conduct medical clearance before release, in order to minimize the possibility of any spread of COVID-19 from the inmate to the public. Such a period will also allow the BOP a reasonable time to allow the BOP to fulfill its obligations under certain federal statutes. See, e.g., 18 U.S.C. § 3771 (notification of victims and witnesses of inmate's release); 18 U.S.C. §§ 4042(b), (c) (notification of law enforcement officials of inmate's release); 42 U.S.C. § 14135a (collection of DNA samples). In particular, when a prisoner who, like Johnson, has been convicted of a "drug trafficking crime," BOP must notify in writing "the chief law enforcement officers of each State, tribal, and local jurisdiction in which the prisoner will reside," "[a]t least 5 days prior to" the prisoner's release. 18 U.S.C. § 4042(b). The U.S. Attorney's Office as well must notify crime victims of any release of the defendant. 18 U.S.C. § 3771(a)(2).

An orderly release process is particularly important during the COVID-19 pandemic, so that BOP can screen the inmate for the virus and arrange for transportation while minimizing the personal interactions required. For comparison, the Attorney General has directed that inmates released to home detention be placed in a 14-day quarantine, either at a BOP facility or at their post-release residence. Similar precautions are appropriate for individuals granted compassionate release, for the protection of those inmates, BOP personnel, and others at their release locations.

A brief delay in Collins' release will also allow the BOP to make the necessary logistical arrangements for processing his release, including any transportation within the BOP that may be necessary.

However, the need for a delay in release underscores why release under § 3582(c)(1)(A) is not appropriate in this case. The BOP has taken extensive action to mitigate the spread of COVID-19, such as transferring a significant number of high-risk prisoners to home confinement under § 3624(c)(2) – efforts that will only expand in the near future. Johnson instead asks this Court to

order compassionate release under § 3582(c)(1)(A), but he does not meet that statute's standards. He has simply not provided this Court with a compelling or extraordinary reason for a compassionate release.

WHEREFORE, the United States respectfully requests that Defendant's Motion for Reduction of Sentence be denied.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

By: /s/MICHAEL LEO IVORY

MICHAEL LEO IVORY
Assistant U.S. Attorney
Joseph F. Weis, Jr. U.S. Courthouse
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500 (Phone)
PA ID No. 59296

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this Response was served to and upon the

following:

Damon Collins
FCI Bastrop
Federal Correctional Institute
PO Box 1010
Bastrop, TX 78602

<u>/s/Michael Leo Ivory</u>
MICHAEL LEO IVORY
Assistant U.S. Attorney